**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212 253-4272
*mreese@reesellp.com*

**REESE LLP**
George V. Granade (Cal State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0700
Facsimile: (212) 253-4272
*ggranade@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (to be admitted *pro hac vice*)
505 Northern Boulevard, Suite 311
Great Neck, New York 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Felicia Toth, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>SC Johnson & Son, Inc. and Method Products, PBC.<br><br>Defendants | Case No. 20-cv-3553<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Felicia Toth ("Plaintiff") on behalf of Plaintiff and others similarly situated brings this Class Action Complaint against SC Johnson & Son, Inc. and Method Products, PBC (collectively "Defendant" or "Method") and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

## INTRODUCTION

1. Defendant manufactures, distributes, markets, labels and sells home cleaning products purporting to be non-toxic, under the Method brand ("Products").

2. During the Class Period (as defined below), Plaintiff purchased the Products in California.

3. Method falsely and misleadingly markets the Products to consumers as being non-toxic as that term is generally understood.

4. In fact, the Products contain several ingredients that each, taken alone, constitutes a toxic ingredient that belies the non-toxic claim.

5. Method charges a premium for these Products.

6. Plaintiff would not have purchased or paid more for the Products had Plaintiff realized that the Products contained toxic ingredients.

## JURISDICTION

7. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the parties are citizens of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

**PARTIES**

9. Plaintiff is a resident of Windsor, California. During the Class Period (as defined below), in California, she purchased the Products for personal, family, or household use at Defendant's Products that stated "Non-Toxic."

10. Plaintiff relied upon this representation when she purchased the Products. She believed that the Products were, in fact, non-toxic. Plaintiff would not have purchased the Products had Plaintiff understood that the true composition of the Products contained toxic ingredients. Plaintiff would purchase the Products again in the future if the Products were remedied to reflect Defendant's labeling and marketing claims for it.

11. Defendant SC Johnson & Son, Inc. is a Wisconsin corporation with its principal place of business in Racine, Wisconsin.

12. Defendant Method is a Delaware corporation with a principal place of business in San Francisco, California, San Francisco County.

**BACKGROUND**

13. In recent years, consumers have become significantly more aware and sensitive of their impact on the environment through the products they choose to purchase and use in their daily lives.

14. Many consumers desire to purchase and use natural, environmentally sound and safer alternatives to traditional household cleaners.

15. As a result, a market has developed for consumer products that contain natural ingredients and are environmentally sound, *i.e.* that are made from recycled goods, that are biodegradable or other signifiers that the product itself is less harmful to the environment in its production, use or disposal.

16. Defendant markets and sells the Product as an environmentally friendly alternative to traditional household cleaning products.

17. To appeal to environmentally conscious consumers, the packaging of the Product represents that the products are "non-toxic" and "plant based."

18. The Federal Trade Commission (FTC) has issued guidelines for products

3

marketed with such environmental messages in the form of the Green Guides ("Guides").

19.     The Guides apply to the marketing and sale of products purported to be environmentally friendly, to "help marketers avoid making environmental marketing claims that are unfair or deceptive." 16 C.F.R. § 260.1.

20.     The Guides prohibit "deceptive acts" or representations which are "likely to mislead consumers acting reasonably under the circumstances and [are] material to consumers' decisions," including representations made through labeling, advertising or other promotional services. 16 C.F.R. § 260.1.

21.     Specifically, "it is deceptive to misrepresent, directly or by implication, that a product, package or service is non-toxic" and "a non-toxic claim likely conveys that a product, package, or service is non-toxic for humans and for the environment generally." 16 C.F.R. § 260.10(a).

22.     To accurately and non-deceptively claim that a product is "non-toxic" marketers must have reliable scientific evidence to substantiate such a claim or "should clearly and prominently qualify their claims to avoid deception." 16 C.F.R. § 260.10(b).

23.     The EPA has cautioned that non-toxic claims might prevent consumers from taking necessary precautions in handling a product and the FTC warned marketers to qualify non-toxic claims carefully unless the marketers can substantiate all express and implied messages inherent in an unqualified non-toxic claim[1]

**SPECIFIC MISREPRESENTATIONS,
MATERIAL OMISSIONS, AND DECEPTIVE ACTS**

**Misleading and Deceptive Name**

24.     The Product's "non-toxic" claim signifies to reasonable consumers that the Products will not be harmful to people (including small children), common pets or the environment.

---

[1] FTC, The Green Guides Statement of Basis and Purpose at 147.





5






25. A reasonable consumer's understanding of "will not harm" is not limited to toxins that cause death but "also various types of temporary physical illness, such as vomiting, rash and

6

1  gastrointestinal upset."[2]

2  26. Contrary to the Products' claims of being "non-toxic," the Products contain
3  ingredients that may be harmful to humans, household pets or the environment generally.

4  27. Several of the Products' ingredients are inconsistent with an unqualified non-toxic
5  claim as the term is applied and understood by consumers.

6  28. While Defendant makes its prominent and unqualified non-toxic claim on its
7  website and in its advertising, Defendant fails to disclose the presence of the potentially harmful
8  and toxic compounds.

9  29. The Products contain several ingredients which disqualify it from making an
10 unqualified non-toxic claim.

11 30. Specifically, the Products contain various cleaning agents that would each,
12 separately, disqualify the Products from making an unqualified non-toxic claim: dipropylene
13 glycol, phenoxyethanol, linalool, methylisothiazolinone, limonene and octylisothiazolinone.

14 31. Defendant uses dipropylene glycol in its All-Purpose cleaner, Squirt and Mop
15 Floor Cleaner and Granite Cleaner.

16 32. Dipropylene glycol is a synthetic ingredient used as a fragrance in Defendant's
17 Products.

18 33. Eye contact with dipropylene glycol may cause temporary irritation.[3]

19 34. Defendant uses phenoxyethanol in its Squirt and Mop floor cleaner and Steel for
20 Real cleaner.

21 35. Phenoxyethanol is irritating to the eyes, skin and respiratory tract; is harmful if
22 swallowed and may cause deleterious effects on the central nervous system and peripheral
23 nervous systems that may result in impaired functions.

24 36. Defendant uses linalool in its All-Purpose cleaner and Squirt and Mop floor
25 cleaner.

---

[2] S.C. Johnson & Son, Inc., Method Cleaning Products, Case #6354, NAD 3/11/2020
[3] http://msdssearch.dow.com/PublishedLiteratureDOWCOM/dh_096d/0901b8038096db12.pdf?filepath=productsafety/pdfs/noreg/233-00306.pdf&fromPage=GetDoc

7

37. Linalool is a known skin and eye irritant that can cause serious eye damage.[4]

38. Linalool is also highly harmful to aquatic life.[5]

39. Defendant uses methylisothiazolinone in its Squirt and Mop floor cleaner, Steel for Real cleaner and Daily Granite cleaner.

40. Methylisothiazolinone was named the Allergen of the Year for 2013 and "has exhibited skin sensitisation effects and may also cause systemic acute toxicity and local effects such as eczema and contact allergy reactions."[6]

41. Defendant uses limonene in its All-Purpose cleaner, Steel for Real cleaner and Daily Granite cleaner.

42. Limonene is used as a substitute for chlorinated hydrocarbons, chlorofluorocarbons and other solvents.[7]

43. Limonene is a skin irritant and dermal exposure to limonene for two hours in one subject caused burning, itching aching and long lasting purpuric rash.[8]

44. Defendant uses octylisothiazolinone as a preservative in its Daily Granite cleaner.

45. Octylisothiazolinone is an environmental toxin that can cause toxic effects in marine dwelling life and sediment dwelling life.[9]

46. Reasonable consumers will not have the time, ability or knowledge to scrutinize each ingredient in Defendant's Products at the point-of-sale when deciding to purchase the Products based on Defendant's deceptive and misleading non-toxic claims.

47. Even if consumers did scrutinize Defendant's website and ingredient lists, they would need to research these components to figure out if they are harmful and apply this information to the meaning of "non-toxic."

---

[4] https://pubchem.ncbi.nlm.nih.gov/source/hsdb/645#section=GHS-Classification
[5] *Id.*
[6] https://www.tga.gov.au/book-page/36-methylisothiazolinone
[7] https://www.who.int/ipcs/publications/cicad/en/cicad05.pdf
[8] *Id.*
[9] https://www.nicnas.gov.au/chemical-information/imap-assessments/imap-assessments/tier-ii-environment-assessments/octylisothiazolinone-preservatives-and-industrial-biocides#RiskCharacterisation

8

**RELIANCE AND ECONOMIC INJURY**

48. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

49. When purchasing the Products, Plaintiff sought a product that contained no toxic components, as represented by Defendant on the front label.

50. Plaintiff read and relied on Defendant's false and misleading product name (*i.e.*, non-toxic), statements and misleading claims in its labeling and advertising of the Products.

51. Plaintiff also saw and relied on statements on the Products' packaging, which misleadingly emphasize "non-toxic" even though the Products contain toxic ingredients.

52. Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

53. The marketing of the Product as "non-toxic" has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

54. The value of the Product that Plaintiff purchased and consumed was materially less than its value as represented by Defendant.

55. Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what she paid for.

56. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Products.

57. Had Plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

58. The Product contains other representations which are misleading and deceptive.

59. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.29 for 28 FL OZ of the All-Purpose Cleaner; $5.99 for 28 FL OZ of the Daily Granite cleaner; $4.99 for 25 FL OZ of the Squirt and Mop floor cleaner and $5.49 for 12 FL OZ of the Steel for Real cleaner, excluding tax, compared to other similar

products represented in a non-misleading way.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class that Plaintiff seeks to represent (the "Class" or the "California Class") is composed of and defined as follows:

> All persons residing in United States who have purchased Method cleaning products purporting to be non-toxic for their own use, and not for resale, since May 27, 2016 to present. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

61. For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the Plaintiff.

62. This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

63. **Numerosity**. The Class consists of thousands of persons throughout the State of California. The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

64. **Commonality and Predominance**. The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action. They predominate over any questions affecting only individual class members. Common questions of law and fact include, but are not limited to, the following:

    (a) Whether Method contributed, committed, or is responsible for the conduct alleged herein;

    (b) Whether Method's conduct constitutes the violations of law alleged herein;

    (c) Whether Method acted willfully, recklessly, negligently, or with gross negligence in the violations of law alleged herein;

    (d) Whether Class Members are entitled to injunctive relief; and

    (e) Whether Class Members are entitled to restitution and damages.

65. By seeing the name, labeling, display and marketing of the Products, and by purchasing the Products, all Class Members were subject to the same wrongful conduct.

66. Absent Method's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Products.

67. **Typicality**. Plaintiff's claims are typical of the claims of the Class, respectively, because Plaintiff purchased the Products and was injured thereby. The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

68. **Adequacy**. Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with those of other Class Members. Each Class Member is entitled to damages reflecting a similar and discrete purchase or purchases that each Class Member made. Plaintiff has retained competent and experienced class action counsel, who intends to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

69. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive. Plaintiff anticipates no difficulty in the management of this action as a class action.

70. This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading and deceptive representations and omissions regarding the Products.

**71. Notice to the Class.** Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

72. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unlawful Conduct Prong of the UCL)**

73. Plaintiff incorporates by reference all preceding paragraphs.

74. California's Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

75. Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products. Specifically, Defendant labeled the Products "non-toxic" when the Products contain ingredients that are harmful to humans, animals including common household pets and/or the environment.

76. Defendant's representations on its labeling and advertisements led and continue to lead reasonable consumers, including Plaintiff, to believe that the Products are non-toxic.

77. Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or label because the Products contain ingredients that are harmful to humans, animals including common household pets and/or the environment.

78. Defendant knew and continues to know that the Products are not "non-toxic." Despite this, Defendant continued to intentionally advertise and market the Products to deceive reasonable consumers into believing that the Products were "non-toxic."

79. Defendant's packaging, labeling and advertising of the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

80. Each of the challenged statements made and actions taken by Method violates the CLRA and the FAL and therefore violates the "unlawful" prong of the UCL.

81. Method leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised.

82. Method's deceptive advertising caused Plaintiff and members of the Class to

12

suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Products over other options that are less expensive and do not advertise as "non-toxic."  Had Plaintiff and the members of the Class been aware of Method's false and misleading advertising tactics, they would not have purchased the Products at all, or would have paid less than what they did for them.

83. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Method from continuing to conduct business through unlawful, unfair and/or fraudulent acts and practices and to commence a corrective advertising campaign.

84. Plaintiff also seeks an order for disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**Unfair and Fraudulent Conduct Prong of the UCL)**

85. Plaintiff incorporates by reference all preceding paragraphs.

86. California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

87. The false and misleading labeling of the Products, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous and offends public policy.  Further, the gravity of Method's conduct outweighs any conceivable benefit of such conduct.

88. The acts, omissions, misrepresentations, practices and non-disclosures of Method, as alleged herein constitute "fraudulent" business acts and practices, because Method's conduct is false and misleading to Plaintiff and members of the Class.

89. Method's labeling and marketing of the Products is likely to deceive Class Members about the toxicity of the Products.

90. Method either knew or reasonably should have known that the claims and statements on the labels of the Products were likely to deceive consumers.

13

91. In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Method from continuing to conduct business through unlawful, unfair and/or fraudulent acts and practices and to commence a corrective advertising campaign.

92. Plaintiff also seeks an order for disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business & Professions Code §§ 17200 *et seq.* –**
**False and Misleading Advertising)**

93. Plaintiff incorporates by reference all preceding paragraphs.

94. California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim." Defendant's acts and practices violate the UCL's proscription against fraudulent and unfair conduct.

95. Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

96. As alleged herein, Method, in its labeling of the Products, makes false and misleading advertising claims, as it deceives consumers as to toxicity of the Products.

97. Method knew or should have known that its labeling and marketing was likely to deceive consumers.

98. As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution and an order for the disgorgement of the funds by which Method was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business & Professions Code §§ 1750 *et seq.* –**
**Consumers Legal Remedies Act)**

**(Injunctive Relief Only)**

99. Plaintiff incorporates by reference all preceding paragraphs.

100. The CLRA adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

101. Method's policies, acts and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA;

    (a) Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

    (b) Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

    (c) Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

    (d) Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

    (e) Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

102. As a result, in accordance with Cal. Civ. Code section 1780(a)(2), Plaintiff and members of the Class have suffered irreparable harm and are entitled to equitable relief in the form of an order enjoining Method from continuing to engage in the deceptive practices described above; requiring Method to provide public notice of the true nature the Products; and enjoining Method from such deceptive business practices in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and other members of the proposed Class herein, prays for judgment and relief on all the legal claims as follows:

1. An order certifying that the action may be maintained as a class action and requiring Method to bear the cost of class notice;

2. An order enjoining Method from pursuing the policies, acts and practices complained of herein;

3. An order compelling Method to destroy all misleading and deceptive advertising materials and packaging;

4. An order requiring Method to pay restitution to Plaintiff and all members of the Class;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

# JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 27, 2020                              Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
100 W 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*


**REESE LLP**
George V. Granade (Cal State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0700
Facsimile:  (212) 253-4272
*ggranade@reesellp.com*


**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck,  New York 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*